JOHNS v. STATE OF INDIANA.

[No. 30,996. Filed September 18, 1968.]

*David E. McClure,* and *Key, Latham, McClure & McClure,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Dennis J. Dewey,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by indictment with the crime of murder in the first degree pursuant to the terms of Acts 1941, ch. 148, § 1, p. 447, § 10-3401 Burns' 1956 Replacement.

Appellant entered a plea of not guilty to the charge embraced in the indictment. Trial was had by jury, which returned a verdict finding appellant guilty of murder in the second degree. Appellant was thereafter on such verdict sentenced to the Indiana State Prison for life.

The case at bar presents a number of unpleasant aspects of criminal procedure, practice and law, some of which have been called to our attention by appellant in his briefs and argument, and some of which the court, *sua sponte,* must take cognizance.

On September 17, 1964, appellant was arrested, without a warrant, in his home. A search of both his person and home, conducted without a search warrant, resulted in the confiscation of a 22 caliber rifle, a twelve gauge shotgun and a pair of trousers belonging to appellant. Neither the entry nor the search was made by invitation of the appellant. Appellant was immediately taken to the city lockup in the City of Indianapolis and at a later date was incarcerated in the Marion County Jail.

At about 10:00 p.m. on the evening of September 19, 1964, Det. Sgt. Brosius, the arresting officer, appeared at the home of Judge Saul I. Rabb, at that time Judge of Marion Criminal Court. Sgt. Brosius brought with him an affidavit for a search warrant with which he hoped to obtain a search warrant to enable him to once again search appellant's home. The affidavit, omitting formal parts, reads as follows:

"WILLIAM D. BROSIUS swears or affirms that he believes and has good cause to believe that the following article described herein which is material evidence in the unlawful killing of one Lillian Kelley on September 17, 1964, in the County of Marion, State of Indiana, is presently located in the house of one Willie B. Johns, said house being a wood frame structure located and known as 1234 Madeira St., Indianapolis, Indiana:

One (1) 22 Cal. revolver, Make: Omega;

That affiant makes this affidavit based on the following: That the firearms records of the Indianapolis Police Department show that the said Willie B. Johns purchased said revolver in October, 1963, and the said Willie B. Johns admitted to this affiant that he owns a 22 cal. revolver and that he kept the same in said house at 1234 Madeira St., (although he, the said Johns, contends that said revolver was stolen from him 'four or five days' prior to September 18, 1964) ; That the deceased, Lillian Kelley, was shot four

(4) times with 22 cal. bullets on September 17, 1964, in the house of one Nathaniel Scott, at 3514 East Orange St., Indianapolis, Indiana, and was observed thereafter in death by this affiant, who saw her wounds and three of the said bullets; That the said Willie B. Johns stated to this affiant that the deceased had stayed with him overnight at said 1234 Madeira St. two weeks prior to her death, and said Nathaniel Scott stated to this affiant that the said deceased had stayed overnight in his said house at 3514 East Orange St. the night before she was killed, to-wit: September 16, 1964; That the said Willie B. Johns on September 17, 1964, identified several items of clothing to this affiant, in said house of the said Willie B. Johns at 1234 Madeira St., said clothing in said house being identified by the said Willie B. Johns as clothing of the deceased, Lillian Kelley; That the parents of the deceased, Cassie V. Kelley and Elmer Kelley, stated to this affiant that the deceased had complained during the previous week (the week prior to her death) that the said Willie B. Johns had been following and bothering her, and the said Nathaniel Scott and one Lenteen Keith stated respectively to this affiant that the said Willie B. Johns had, at different times during the last few weeks, been hiding behind bushes in the neighborhood of the said house of Nathaniel Scott at 3514 East Orange St., and had peered into the front window of same on September 12, 1964.

Affiant also swears or affirms that a blue knitted sweater which the deceased was wearing when she was last seen alive at approximately 5:10 A. M. by Nathaniel Scott on September 17, 1964, is missing, together with her slip, a piece of which was found under her body, and the search to include all three items (said gun, sweater and torn slip) will be made on the entire premises of the said house at 1234 Madeira St., and the lot upon which it is situated, said lot being fenced, approximately 80′ x 60′."

On the basis of the above affidavit, Judge Rabb issued the requested search warrant, which reads in pertinent part as follows:

"YOU ARE, THEREFORE, COMMANDED, in the name of the State of Indiana, with the necessary and proper assistance, in the day time or in the night time, to enter into the premises described in said affidavit and there diligently search for the said 22 Cal. revolver, Make: Omega, one (1) blue knitted sweater, and torn slip aforesaid, and

that you bring the same or any part thereof found on such search, forthwith before me, at my office, to be disposed of according to law."

Armed with the search warrant, Sgt. Brosius, in the presence of several of appellant's neighbors as witnesses, conducted a thorough search of appellant's home on September 20, 1964. This search resulted in the finding of a 22 caliber pistol, which was subsequently identified as the murder weapon.

While in jail, appellant was informed that his pistol had been found. He was then questioned about the pistol by police officers. During the questioning appellant was not afforded the advice of counsel. Nor does it appear that appellant had the benefit of counsel during several conversations which provided the investigating officers with a portion of the information contained in the affidavit for the search warrant. Moreover, on October 18, 1964, appellant was induced to sign, without either the advice or presence of counsel, a document entitled, "Consent For Blood Examination." This document purportedly contains appellant's consent to have his blood typed and compared with decedent's blood, and with the blood found on the gray trousers that were confiscated from appellant's home on September 17, 1964. Further, other conversations took place on numerous occasions, and from which the police garnered information from appellant concerning his relations with decedent and other matters relevant to the investigation. At no time during these conversations was appellant either represented or advised by counsel.

On October 19, 1965, appellant, through his counsel, filed a Verified Petition for Writ of Habeas Corpus. In response to the petition a Writ of Habeas Corpus was issued on October 22, 1965.

On October 21, 1965, appellant filed a written Motion for the Production of the Names and Addresses of Witnesses. In view of its importance, the petition is set out in full.

"Comes now the petitioner in the above entitled cause, which is a charge of First Degree Murder, without bond,

and respectfully prays the Court for an Order requiring the State of Indiana, the Sheriff of Marion County, the Prosecuting Attorney of Marion County, and any and all law enforcement agencies of Marion County, Indiana, who may have and do have any relevant, germane and pertinent evidence and information relating to this cause, to give and turn over to petitioner and his Attorney of record, William C. Erbecker, the names and addresses that the State of Indiana has in their possession concerning said cause and which the State of Indiana intends to and will rely on in the prosecution of this cause.

Petitioner further says that the production of the production of the same is essential to a proper presentation of the issue raised in the VERIFIED PETITION FOR WRIT OF HABEAS CORPUS heretofore filed in this cause.

WHEREFORE, petitioner respectfully prays that this motion be sustained for the reasons hereinabove enumerated."

In response to appellant's motion, the trial court issued the following order:

"Comes now the petitioner in the above entitled cause, by Counsel, and having heretofore filed his MOTION FOR PRODUCTION OF THE NAMES AND ADDRESSES OF WITNESSES on ——, ——, which said Motion is in the words and figures as follows, to-wit:

(H. I.)

And the Court having seen and examined said Motion and being duly and sufficiently advised in the premises, now grants and sustains the same.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Prosecuting Attorney of Marion County shall deliver over and give to the petitioner Willie John and/or her (sic) Attorney of record, William C. Erbecker, forthwith the names and addresses of any and all witnesses which he has in his possession concerning said cause and which the State of Indiana intends to and will rely on in the prosecution of this case, all of which the said Prosecuting Attorney of Indiana is ordered to do forthwith."

Appellant, on October 25, 1965, filed a motion to suppress and reject evidence, on the grounds that at the time appellant

was arrested and searched, the arresting officers did not: (1) See appellant commit any misdemeanor; (2) Have a warrant for the arrest of appellant or a search warrant for his person; (3) Have probable cause to believe that appellant had committed a crime.

A Verified Motion to Quash Search Warrant was filed by appellant on January 24, 1966. This motion was overruled the same day it was filed.

As regards the appellant, the record reveals without contradiction that he is a Negro, and was, at the time of his arrest, sixty-four years old. Further, appellant has what the pre-commitment report characterized as a "limited fourth grade education." He had been a resident of Marion County, Indiana, for thirty-four years. He was described as being a hard worker with a good employment record. He had never before been arrested on any charge or convicted of any offense. Nevertheless from the date of his arrest on September 17, 1964, he was confined continuously, without bond and without trial, for a period of one year and seven months.

Appellant's first argument on appeal may be summarized as follows. A special trial judge ordered the State of Indiana to comply with a motion requiring the State to furnish the defendant with the names and addresses of the State's witnesses, in addition to those endorsed on the back of the indictment, on whom the State intended to rely in the prosecution of the case. The state failed to furnish the defendant with any additional names, thereby leading the defendant to conclude that the State intended to rely only on those witnesses whose names were endorsed on the back of the indictment. During the trial the State presented four witnesses whose names had not been furnished to defendant. The defendant objected to the testimony of these witnesses, but the objections were overruled and the witnesses were allowed to testify. In his motion for a new trial the appellant specified as error the overruling of his objection to the testimony of

the four named witnesses. The motion for a new trial was also overruled. The overruling of the Motion for New Trial is assigned as error in appellant's assignment of errors.

Under the doctrine outlined in *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536, it is clear that the trial court, when requested by the defendant in a criminal proceeding, has the duty to order the State to furnish the defendant with the names and addresses of those witnesses upon whom the State intends to rely in the prosecution of the case, unless the State is able to show a paramount interest in non-disclosure. Only a showing by the State that disclosure of the identity of the witnesses would subject them to harassment, would endanger their physical well being or the well being of their family or friends, or would facilitate perjury is sufficient to constitute a paramount interest as contemplated in *Bernard*. *Norton* v. *Superior Court* (1959), 173 Cal. App. 2d 133, 343 P. 2d 139. The purpose of the *Bernard* doctrine is to insure justice and fairness in criminal proceedings, and it is axiomatic that an accused is not justly and fairly tried when his counsel is compelled to maneuver in a factual vacuum. Nor is fairness and justice enhanced when convictions are gained through surprise, or by the prosecution misleading the defense.

However, the power of the trial court to order disclosure by the State of its witnesses did not originate with *Bernard*. Rather, it is grounded in the inherent power of the trial court to guide and control the proceedings. *Bernard* v. *State, supra; People* v. *Johnson* (1959), 356 Mich. 619, 97 N. W. 2d 739. It was this inherent power that was exercised when, in the case at bar, the trial court, pursuant to defendant's motion, ordered the State to furnish the defendant with the names and addresses of the witnesses on whom it intended to rely "in the prosecution of the case." Clearly, then, the trial court did have the power to issue its order requiring the State to disclose the identity of its witnesses to defendant.

Further, the order was unambiguous in that it explicitly stated that the State was to furnish the defendant with the names and addresses of *"all witnesses"* upon whom the State *"intends to and will rely in the prosecution of this case."* It was not limited, as the State contends, to only those witnesses who would be heard at the hearing on the Writ of Habeas Corpus. The language of the order made it abundantly clear that the order extended to *"all witnesses"* that the State would rely on throughout the *"prosecution of the case."* The State made no showing of inability to comply with the order, nor did it establish that disclosure would be adverse to the interests of the witnesses or that it would otherwise be used for an improper purpose. Instead, the State, by failing to furnish the defendant with any additional names, led the defendant to conclude that the State intended to rely on only those witnesses whose names were endorsed on the back of the indictment.

There is no doubt that appellant, by failing to move for a continuance when the witnesses were called, failed to pursue his proper remedy. However, this Court cannot, and should not, look with equanimity upon a blatant disregard of a court's order by the State in a criminal proceeding, particularly where the defendant's life is at stake. Had the State, prior to trial, sought a rehearing on defendant's motion, or made a good showing of inability to comply with the order, it would not now be in a position of having deliberately disobeyed the order of the trial court. We agree with appellant's counsel in their argument that it is fundamentally a denial of due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States to lead a defendant to believe that he has been afforded the right of discovery, and then permit the State of Indiana, in violation of an order of court, to present, during its case in chief, surprise witnesses whose testimony substantially added to the weight of the State's case.

Appellant's second contention also deserves some comment.

Briefly, appellant argues that the trial court erred in overruling his motion to quash the search warrant and suppress the evidence. He contends that the affidavit for the search warrant was insufficient, and that the search warrant, issued on the basis of the affidavit, was itself defective. The basis of appellant's argument is that, in Indiana, a search warrant may only issue upon the showing of probable cause, and that an affidavit based on hearsay information and conclusions of the affiant is insufficient to show probable cause.

This Court has previously held in *Rohlfing* v. *State* (1949), 227 Ind. 619, 88 N. E. 2d 148, that for a search warrant to issue:

". . . The judicial determination of probable cause as required herein must be based on facts and not on hearsay. *Wallace* v. *State, supra,* at page 329, of 199 N. E. 657; *Bucari* v. *Fili* (1940), 31 F. Supp. 433; *Worthington* v. *State* (1948), 166 F. 2d 557, 564." 227 Ind. 619, 623.

We recently had occasion to re-evaluate the position taken in *Rohlfing*. Recognizing that ". . . the doctrine that hearsay will not support the issuance of a search warrant . . . is not the rule as announced by the United States Supreme Court," this Court in *McCurry* v. *State* (1967), 249 Ind. 191, 231 N. E. 2d 227, nonetheless reaffirmed the rule enunciated in *Rohlfing,* and held:

"The doctrines with reference to hearsay as set out in *Rohlfing* v. *State, supra,* still remain the law in Indiana." 231 N. E. 2d 227, 229.

We now reaffirm *Rohlfing* v. *State, supra,* and *McCurry* v. *State, supra,* and hold that an affidavit based on hearsay information and mere conclusions of the affiant is insufficient to show probable cause, and that a search warrant issued on the basis of such an affidavit is necessarily fatally defective.

In the instant case, it is clear that the affidavit for the search warrant was based on hearsay and mere conclusions

of the affiant. Therefore, the search warrant was fatally defective in that probable cause was not shown, and the overruling of the Motion to Quash Search Warrant and suppress evidence was error. *McCurry* v. *State* (1967), 249 Ind. 191, 231 N. E. 2d 227; *Dalton* v. *State* (1952), 230 Ind. 626, 105 N. E. 2d 509; *Rohlfing* v. *State* (1949), 227 Ind. 619, 88 N. E. 2d 148.

We express no opinion as to the guilt or innocence of the appellant, or as to the merits of the case. The record before us is such that it reflects a denial and deprivation of basic constitutional and civil rights of the defendant.

The judgment of the conviction is reversed and the cause remanded to the trial court with instructions to grant appellant's Motion for a New Trial.

Lewis, C. J., and Hunter and Mote, JJ., concur; Arterburn, J., dissents.

NOTE.—Reported in 240 N. E. 2d 60.