ISIDORE ORTEZ *v*. STATE OF INDIANA; ERSELL BRIDGES *v*. STATE OF INDIANA; WILLIAM BATSON *v*. STATE OF INDIANA.

[No. 1-1274A183; 1-1274A182; 1-1174A175. Filed September 16, 1975. Rehearing denied October 24, 1975. Transfer denied February 16, 1976.]

*Robert Howard Brown, William G. Smock,* Terre Haute, for appellant Ortez and appellant Bridges; *Woodrow S. Nasser, Nasser, Felling & Tabor,* Terre Haute, for appellant Batson.

*Theodore L. Sendak,* Attorney General; *Robert S. Spear, Walter F. Lockhart,* Deputy Attornies General, for appellee.

LOWDERMILK, J.—The defendants-appellants (Ortez, Batson, Bridges) each appeal a conviction of illegal sale of a dangerous drug. Because each appeal contains the same controlling issue, we consolidate them, pursuant to Ind. Rules of Procedure, Appellate Rule 5(B).

### FACTS:

Beginning in the fall of 1972, the Indiana State Police, in conjunction with the Terre Haute Police Department, began an extensive drug investigation in Vigo County. During the first stages of this investigation, the State Police enlisted the aid of John Dallas Wise, Jr. (Wise) as an informer. It is apparent from the three transcripts that Wise was used extensively by the investigating officers (Wood and Green), and that he was paid for his efforts.

The particular facts leading to the arrests of Ortez, Batson and Bridges need not be recounted for purposes of this opinion.

It is sufficient to state that the police and each appellant give opposing accounts of the allegedly illegal sales and that in each case Wise was instrumental in establishing initial contact with the three appellants, and was present when each allegedly illegal sale took place.

The last drug transaction with which we are concerned took place February 16, 1973, at the home of Ortez. On that same day, or possibly the next, Wise was paid four hundred dollars ($400) and he boarded a plane for California. At present, Wise's whereabouts are unknown.

At the trial of each case issue was taken with the unavailability of Wise for deposition and examination. Batson filed a motion to produce Wise, which was denied; Ortez submitted a motion requesting the issuance of a subpoena for Wise, which was granted; and Bridges filed a motion to disclose evidence, which was denied, only on the ground that the court had already ordered the State to produce Wise.

As noted, Wise was not produced for deposition or trial, and Batson, Ortez and Bridges all filed motions to dismiss based on the absence of a material witness. In each case, the motion to dismiss was denied, and the causes continued to trial without the filing of motions for continuance based on the absence of Wise, or any attempt to locate and return him for examination.

I.

The central argument raised by Batson, Ortez and Bridges is that they were denied a fair trial because the State purposefully and in bad faith made Wise unavailable to defense counsel. It is asserted that Wise was clearly a material witness because of his participation in each of the transactions, and that the police knew him to be such.

Ortez, Bridges and Batson contend that the state police advised Wise to leave the area at the conclusion of the investigation, and further told him that he would never have to testify. It is contended that Wise was not merely an informer, but

a paid participant, and that he should not be hustled away when his materiality to the defense was obvious.

The appellants contend that the action by the state police deprived them of invaluable evidence, and violated the Fifth, Sixth and Fourteenth Amendments to the Constitution.

While the State admits that a defendant may be granted extensive pre-trial discovery, it contends that it has no duty to call or produce a particular witness. The State also argues that it did not at any time conceal the name of the informer, nor refuse to attempt to locate Wise. The State admits that Wise was advised to leave the Terre Haute area "for his health", but asserts that it did make unsuccessful efforts to locate Wise in California.

Further, the State contends that the proper remedy of a continuance was not used here; thus the absence of Wise was waived. The State also notes that there was no offer to prove Wise's testimony; that there was no proof that the State was actively concealing Wise; that the defense did not attempt to produce Wise; and that there has been no demonstration of prejudice resulting from Wise's absence.

Batson, Ortez and Bridges raise various other arguments in their briefs. However, we need not discuss them inasmuch as we have determined that all of the present appeals must be reversed on the issue of the production of the informant, John Wise.

## II.

The main case relied upon in all three appeals is *Roviaro* v. *United States* (1957), 353 U.S. 53. In that case Roviaro sought to learn the identity of an informant who participated in a drug transaction. Rovario's numerous requests were denied, and he was convicted.

The Supreme Court recognized the value of not disclosing the names of informers in every case. However, the court noted that the privilege of the government to withhold the

identity of informers is "limited by its underlying purpose." The court went on to say that

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." (Footnotes omitted.)

In concluding its discussion, the Supreme Court stated that

". . . no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, *the possible significance of the informer's testimony*, and other relevant factors." (Our emphasis.)

Following *Roviaro,* the lower federal courts have established a procedure which remains the standard today. If the informant was not a participant or witness, identity will be withheld; but where the informant was actively involved or observed at the scene of the crime, then disclosure is required. *See, Hawkins* v. *Robinson,* 367 F. Supp. 1025 (D. Conn. 1973), and cases cited; Annot., 76 A.L.R. 2d 267 (1961).

Clearly, we are not here concerned with the failure or refusal of the State to disclose the identity of an informer—Wise's identity was known well before trial. We are, however, concerned with the power and ability of the State to effectively deny to a defendant evidence which may be crucial to the formulation of a proper defense. We are, as stated by the Supreme Court, concerned with the "fundamental requirements of fairness." The result to the defendant is the same whether the informant is unknown or unavailable, and our inquiry is not therefore limited by the precise factual background of *Roviaro* and its progeny.

The Indiana Supreme Court has clearly established at least a limited right to pre-trial discovery by a criminal defendant. *See, Bernard* v. *State* (1967), 248 Ind. 688, 230 N.E. 2d 536; *Johns* v. *State* (1968), 251 Ind. 172, 240 N.E.2d 60, *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N.E.2d 873. This right of discovery includes the right to the names of witnesses who will be used to support the prosecution's case. *Johns, supra.*

In addition, our Supreme Court has recognized that a conviction may be reversed on constitutional grounds where the police negligently destroy or withhold *material* evidence. *Hale* v. *State* (1967), 248 Ind. 630, 230 N.E.2d 432. This conduct by police or prosecution was recently discussed in *Birkla* v. *State* (1975), 263 Ind. 37, 323 N.E.2d 645, where our Supreme Court stated that

". . . the duty of the prosecutor vis-a-vis a defendant's right to fair trial commences when the citizen is charged. Thus, a suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or punishment, irrespective of the bona fides of the prosecution. *Brady* v. *Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. *Prior to any request for discovery by the defendant,* the negligent destruction or withholding of material evidence by the police or the prosecution may present grounds for reversal. *Hale* v. *State* (1967), 248 Ind. 630, 230 N.E.2d 432.

The prosecutor, however, is not yet required to disclose or produce nonmaterial evidence. Hence, the prosecutor, after a charge has been filed but before the defendant has requested discovery, may determine whether particular *nonmaterial* evidence should, nevertheless, be produced, retained or destroyed. If the prosecutor decides to retain evidence of questionable materiality, it is clear that his subsequent conduct at trial in exaggerating its nonproduction, may enhance the materiality and require its production. *Arline* v. *State* (1973), [156] Ind. App. [95], 294 N.E.2d 840. In support of the present rule permitting prosecutorial discretion in the destruction of nonmaterial evidence, the state argues that a mandatory retention rule 'would require the police and prosecutors to become repositories of superfluous material, obligated to preserve the fruits of absolutely every inquiry made, however meritless or fallacious

they were revealed to be upon further investigation.' We cannot say the interest advanced by the state is not a legitimate one. However, it is not of the same magnitude as a defendant's right to a fair trial. We therefore hold that when the prosecution determines evidence to be nonmaterial, and further decides not to advise defense counsel of such evidence prior to its destruction, a heavy burden rests upon the prosecution to demonstrate that the destruction of such evidence did not prejudice the defendant.

In determining materiality, the prosecution should consider the seriousness of the charge. *The prosecution must consider whether the evidence is relevant either to the defendant's guilt or punishment. The prosecution must evaluate the potential usefulness to the defendant of the evidence, for rebuttal or impeachment of the state's case.* After considering all of these factors, if the prosecutor has any doubts concerning the potential materiality of the evidence, he must retain it." (Our emphasis.) 323 N.E.2d at 648-649.

While the court in *Birkla* expressly refused retroactive application of the above-stated rule, we feel that the above language must be considered in light of the Supreme Court's decision in *Dorsey* v. *State* (1970), 254 Ind. 409, 260 N.E.2d 800.

In *Dorsey*, an informant-participant was sought by the defense for deposition, and the court ordered the prosecution to produce the informant and two policemen. Neither the police nor the informant was produced. The Supreme Court relied on *Johns, supra,* in stating that

"In the case at bar, just as in *Johns*, we are faced with what can only be characterized as '* * * a blatant disregard of a court order by the State in a criminal proceeding.' In the case at bar, however, the implications are far more sinister in view of the very active part played by the State in seeing that Powell, a material witness, left the State of Indiana immediately upon completion of the investigation. Although the State was apparently quite willing to pay Powell $500.00, take him to the airport, and see him off to California, it was apparently unwilling to obey the court order requiring the production of Powell at trial for the taking of depositions. In addition, the State failed to produce the two investigating officers at the time and place ordered by the court for the taking of depositions." 254 Ind. at 418. Finally, the court noted that

"Inasmuch as Powell was allegedly present throughout the critical stages of the investigation in the case at bar, it can hardly be argued that he was not a material witness. In fact, given the nature of the investigation, it is quite possible that information available from Powell could have afforded the appellant an affirmative defense. Thus, it cannot be disputed that the opportunity to question Powell prior to trial would clearly '* * * have been beneficial in the preparation of appellant's case.' 248 Ind. 692. By failing to produce Powell and the other two witnesses for depositions, as ordered by the court, the State very effectively denied the appellant his right to pre-trial criminal discovery; a right which this Court has previously recognized and enforced. . . . Moreover, by failing to obey the court order to produce the witnesses for depositions, the State denied the appellant the statutory right under Ind. Ann. Stat. § 9-1610 (1956 Repl.) to take the depositions of the State's witnesses. See, *Amaro* v. *State* (1968), 251 Ind. 88, 239 N.E.2d 394." 254 Ind. at 418.

Reading *Birkla* and *Dorsey* together, a heavy burden is cast upon the prosecution to avoid or adequately justify the premature disposal of material evidence. A violation of the duty imposed raises constitutional as well as statutory and common law questions. Further, it is clearly established that a participant-informer is almost always a "material" witness. *Dorsey, supra; see also, United States* v. *DeStefano,* 476 F.2d 324 (7th Cir. 1973) ; *United States* v. *Barnett,* 418 F.2d 309 (6th Cir. 1969).

While in only one appeal at bar (Bridges) was there a court order *to the prosecution* to produce Wise, as in *Dorsey,* in all of the appeals the defendants attempted by various means to secure the presence of Wise for questioning. Rather than focus on the procedural attempts by Bridges, Ortez and Batson to *return* Wise for examination, in light of the above cases we feel we should consider the State's actions in using Wise as a contact, and the charges that he was purposely removed from the area by the state police. We therefore examine the facts surrounding the departure of the informant, Wise, and, secondarily, the efforts to return him to Indiana.

### III.

The testimony by police officers involved, as it bears most directly on the departure of Wise, is as follows:

(A)    From the Ortez trial:

"Q. And—ah—Had you told him or one of the other troopers in your presence—ah—told him that he would not be required to testify?

A. All informants are told that, yes, sir.

Q. I didn't ask you about all informants. Would you ask the witness to answer the question, please?

A. Yes, sir.

Q. Did you tell him he would not have to be . . .

A. Yes, I did.

\* \* \*

Q. During the course of your investigation, did you ever feel that you—that the State of Indiana would need to produce John Wise either in name or in person?

A. No, sir.

\* \* \*

Q. Alright, I'll ask you specifically this, disregard everything else, had you not made a statement other than today that you did suggest to Mr. Wise that he leave town? Yes or no.

A. Yes, sir, I have.

\* \* \*

Q. Alright. Did you make any attempt to locate —ah— Mr. Wise after you received those subpoenas? [issued by the trial court at the request of Ortez]

A. No, I did not."

(B)    From the Batson trial:

"Q. Speaking of John Wise, is it not true that you advised him to leave this area?

A. He asked for my advice, yes, sir.

Q. And you advised him to leave the area?

A. I told him it probably wouldn't be healthy here, yes sir.

\* \* \*

Q. Has he, in fact, kept in contact with you?

A. He's—I've talked to him three or four times since he left yes, sir.

Q. Alright. Do you know his whereabouts at the present time?

A. I know he's in California.

\* \* \*

Q. And you could have traced through as to what phone he called from at that time?

A. I could have, yes.

Q. Alright. Did anyone in your department actually make an attempt to do this—trace this call?

A. To trace the call? No, sir."

(C) From the Bridges trial:

"Q. Now—ah— I'm not so sure I understand what your answer was, so in order to clarify that, would you tell the jury specifically whether or not you suggested directly or indirectly that John Wise should leave the State of Indiana or leave this area?

A. I suggested that he leave the area. Your question, earlier, was this jurisdiction or this State.

Q. Alright. You did suggest, though, that he leave this area?

A. I thought it would be safer than staying here, yes sir.

\* \* \*

A. Well, as far as making the suggestion, I never suggested that he leave the State. I suggested, probably be healthy to leave the Terre Haute area.

\* \* \*

Q. Was it your intention that —ah— Mr. Wise would not be used as a witness?

A. Yes, sir. It was."

In addition to the above, it is clear from the records that Wise was paid a total of over one thousand dollars ($1,000), four hundred dollars ($400) of which was paid him on the day or the day before his plane left for California.

We believe, initially, that the above testimony in conjunction with the fact that Wise was used repeatedly over a five month period, supports a distinction between informers, and those who are somewhat euphemistically referred to as "special employees." Wise was not a citizen volunteering his

casual observations or suspicions based thereon. Rather, he was paid by the police to repeatedly perform the designated functions of establishing contacts with various persons, and participating in the transactions resulting therefrom. Wise's knowledge of the investigation in general, and the specific facts of the transactions here involved was, and is, intimate. The records clearly establish that Wise was physically present and within hearing distance at all three allegedly illegal transactions. Thus, in light of the fact that the police say the appellants offered to sell, and Ortez, Bridges and Batson assert the opposite, Wise's testimony would provide crucial corroboration one way or the other.

It is a fair assumption that the prosecution would not have called Wise even if he were available, inasmuch as each sale was between one of the appellants and a police undercover agent. The facts of the sale could be, and were in fact, recounted by the officer directly involved. This police testimony in conjunction with the introduction of the dangerous drug was all the State needed for its case. Given this assumption, it is not unreasonable or unbelievable that the State's witnesses would testify that they did not feel it would be necessary to use Wise at trial.

The next question is whether it is proper for police to advise or suggest that a material witness leave the area; especially when the advice is "open-ended," and without any qualification, such as staying within the state, or without five hunderd (500) miles, et cetera.

We are not particularly concerned whether the absence of Wise was the result of negligent advice or the intentional withholding of evidence. As our Supreme Court stated in *Hale, supra,*

> "In these citations we have not differentiated negligent failure to disclose or negligent destruction from intentional destruction or intentional non-disclosure for the reason that we fail to see any valid basis for distinction as long as the interest to be protected is that of the defendant's right to a fair trial and due process." 248 Ind. at 630, note one (1).

■ Under the present facts, we must conclude that Ortez, Batson and Bridges were denied a fair trial by the actions of the state police.

It is one matter to decide who shall be called to support the State's case at trial, and quite another to advise or encourage material witnesses, who may be highly valuable to the defense, to leave the area with the impression that testimony of *any* type will not be required. The prosecution does not have the right to decide defense strategy. Likewise, under *Birkla, supra,* the prosecution must *retain* all evidence if he has ". . . any doubts concerning the potential materiality." We recognize that retaining a witness is not the same as retaining physical evidence, as was the case in *Birkla.* We also realize that Wise himself may have desired to drop out of sight following his undoubtedly unpopular conspiracy with the police.

Notwithstanding the above considerations we cannot ignore the facts that the police knew Wise was leaving for California; that no mention was made of possible questioning by the defense; that Wise was paid immediately before his departure; and that it was the apparent intention of the police that Wise never be questioned. Thus, while the police and the prosecution were quite willing to use Wise extensively for several months, maintain his "cover," supply him with meals and gas, and pay him for his services,[1] they were unwilling to even attempt to have Wise available for questioning.

We have no proof that Wise was threatened; no intimation of why it was necessary that Wise leave for the west coast the day the investigation ended. Perhaps Wise would never have been called at trial; a deposition may have clarified exactly what use further examination would have served. Of course, this is speculation on our part. What is crucial is that the

---

1. *See,* however, *Walker* v. *State* (1970), 255 Ind. 65, 262 N.E.2d 641, where the Supreme Court stated, with regard to the same informant as in *Dorsey,* that defendant's rights were not violated by the use of the informant or his absence *when there was no request for the presence of the informant.*

appellants were denied any opportunity to even evaluate Wise's knowledge of the drug transactions.

## IV.

The State has raised the argument that there has been no showing by the appellants that *they* attempted to locate and return Wise. Also, the State contends that the absence of Wise was waived because none of the appellants filed a motion for continuance.

We feel both of the above arguments are met by a consideration of the statutes which provide for the return of out-of-state witnesses.

IC 1971, 35-6-2-2, Ind. Ann. Stat. § 9-1627 (Burns 1956) provides that

> "If a person in any state *which by its laws has made provisions for commanding persons within its borders to attend and testify in criminal prosecutions in this state,* is a material witness in a prosecution pending in a court of record in this state, a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. This certificate shall be presented to a judge of a court of record in the county in which the witness is found. If the witness is subpoenaed to attend and testify in the criminal prosecution in this state he shall be tendered the sum of ten cents [10¢] a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending and five dollars [$5.00] for each day that he is required to travel and attend as a witness. A witness who has appeared in accordance with the provisions of the subpeona shall not be required to remain within this state a longer period of time than the period mentioned in the certificate." (Our emphasis.)

The corresponding California statute, West's California Ann. Penal Code, § 1334.2, reads in pertinent part as follows:

> "If a judge of a court of record in any state, *which by its laws has made provision for commanding persons within that state to attend and testify in this state,* issues a certificate under the seal of the court that here is a criminal prosecution pending in the court, or that there is a grand

jury investigation, that a person within this state is a material witness in such prosecution or grand jury investigation, and that his presence will be required for a specified number of days, then, upon presentation of the certificate to a judge of a court of record in the county in which the person is, a time and place for a hearing shall be fixed by the judge and he shall make an order directing the witness to appear at the hearing." (Our emphasis.)

Clearly, the above statutes are reciprocal in nature, and neither state will aid in the securing of material witnesses unless the requesting state would do the same. With this in mind, we take note of IC 1971, 35-6-2-1, Ind. Ann. Stat. § 9-1626 (Burns 1956), which provides in part as follows:

"9-1626. Compulsory attendance of resident witnesses at trial in another state.—If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in criminal prosecutions in this state certifies under seal of such court that there is a criminal prosecution pending in such court, that a person being within this state is a material witness in such prosecution, and that his presence will be required for a specified number of days, upon presentation of such certificate to any judge of a court of record in the county in which such person is, such judge shall fix a time and place for a hearing and shall notify the witness of such time and place. *If* at the *hearing the judge determines* that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution in the other state, that *the witness will not be compelled to travel more than one thousand [1,000] miles to reach the place of trial by the ordinary traveled route,* and that the laws of the state in which the prosecution is pending and of any other state through which the witness may be required to pass by ordinary course of travel will give to him protection from arrest and the service of civil and criminal process, *he shall cause the clerk of such court to issue a subpoena,* with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending at a time and place specified in the subpoena." (Our emphasis.)

It thus appears that Indiana will not compel attendance beyond 1,000 miles. Therefore, inasmuch as California will

aid the return of witnesses only where another state has statutes which "command" attendance at trials in that state, in the case at bar, California probably would *not* compel Wise to return to Indiana. Wise, therefore, is effectively beyond the reach of any court process which may issue to secure his presence at deposition or trial.

Given the above limitations of our statutes, a motion for continuance would have been of no avail. Similarly, while we may prefer that the defense make some attempt on their own to secure their witnesses, in this case, any such attempt would have been futile. Finally, we note that while a motion for continuance has been called the "proper remedy" in similar cases, see *Johns, supra; Dorsey, supra,* given the present statutory problem, we do not consider a motion to dismiss inappropriate.

## V.

In concluding this opinion, we must emphasize that we view the present appeals within the context of constitutional guarantees. While we recognize that the failure to grant pre-trial discovery is not itself a constitutional violation, each criminal defendant is guaranteed a fair trial, and this must mean that participants in the allegedly illegal act will not be unavailable *because of* the negligence or bad faith of the state. U.S. Const. Amend. V, VI, XIV; Ind. Const., Art. 1, §§ 12, 13; *Brady* v. *Maryland* (1963), 373 U.S. 83; *Fair* v. *State* (1969), 252 Ind. 494, 250 N.E.2d 744; *Hale, supra.*

Because of the constitutional questions raised by the State's activities, we have considered the present appeals in light of established federal standards. In short, once constitutional error is found we must determine whether, beyond a reasonable doubt, the error did not contribute to the convictions. *Greer* v. *State* (1969), 252 Ind. 20, 245 N.E.2d 158; *See also, Bauer* v. *State* (1973), 157 Ind. App. 400, 300 N.E.2d 364; *Larimer* v. *State* (1975), 163 Ind.

App. 673, 326 N.E.2d 277. We conclude that the error demonstrated in the present appeals is not harmless.

Wise offered the only chance for Ortez, Bridges and Batson to impeach or contradict the State's testimony, and possibly corroborate their own testimony. We cannot say that the absence of Wise, especially where credibility was obviously a major consideration, did not prejudice the present appellants.

We wish to emphasize that our holding today is limited to the facts presented. We find in the State's conduct a plain disregard for the rights of criminal defendants by their use *and* unrestrained release of "special employees" such as Wise. We take issue not so much with the State's failure to act upon subpoenas and orders from the trial court, as with the effective removal of Wise from the grasp of judicial process. We fully recognize the State's legitimate claim that informants must be kept confidential to avoid injury and encourage citizen cooperation. Further, we do not by this opinion intend to make police the guardians of all who cooperate in criminal investigation. Finally, the prosecution should not bear the burden of assembling the defendant's evidence.[2]

In this case, however, the above considerations do not negate the rights due the appellants, nor the course of conduct by police and prosecution.

The convictions of Batson, Ortez and Bridges are hereby reversed and remanded to the trial court.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 333 N.E.2d 838.

---

2. *See, Allbritten v. State* (1974), 262 Ind. 452, 317 N.E.2d 854, and cases cited therein.