**Tames Clyde THORNE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1280S440.

Supreme Court of Indiana.

Dec. 31, 1981.

Rehearing Denied March 10, 1982.

John F. Davis and Mary Jane Humphrey, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Dan S. LaRue, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted after a trial by jury of two (2) counts of Dealing in a Scheduled II Controlled Substance, Ind.Code § 35–48–4–2(1) and § 35–48–2–6(e)(5) (Burns Supp.1981), and sentenced to concurrent twelve (12) year terms of imprisonment. One issue raised by this direct appeal compels us to reverse and remand the cause for a new trial.

Paid informant Terry Smith indicated to Evansville Police Officer Randy Heidorn that drugs could be obtained from the de-

fendant. On May 24, 1979, Smith and Heidorn met with the defendant at his home where a sale and delivery of phencyclidine, a controlled substance, were made.

The information filed on December 24, 1979, listed six police officers by name, one "confidential informant c/o narcotics," and "Jerry Moore," as witnesses. Jerry Moore was, in fact, a police code name for Terry Smith. Terry Smith was not otherwise named and there was nothing to indicate that Moore was an alias used to preserve confidentiality.

On January 10, 1980, Defendant filed a pre-trial motion for discovery, which was sustained by the court and required disclosure of the names and addresses of all witnesses upon which the State would rely. The State did not comply with the order, however, it did permit Defendant's attorney to examine its file.

On the second day of trial, the State offered Terry Wayne Smith as a witness. The defendant protested, Smith not having been disclosed as a witness, whereupon it was then disclosed that he was a confidential police informer and had been assigned the alias, or code name, of Jerry Moore, that name having been endorsed upon the information. Following a hearing outside the presence of the jury the trial court overruled a defense motion to preclude the witness from testifying and a motion for a continuance, and the witness proceeded to testify as an eye witness to the transaction. His testimony was the only evidence corroborative of the testimony of Officer Heidorn, thus its prejudicial impact is beyond question.

At the hearing following the tender of Smith as a witness, the State maintained that it was warranted in not disclosing his true identity as a measure for the security of the witness, whom Defendant had accused of "setting him up" and had threatened with death or grave physical harm if he testified.

"The guiding principle to be followed by trial courts in dealing with the area of criminal discovery was set down in *Bernard v. State, supra* [248 Ind. 688, 230 N.E.2d 536]. That case involved a request by a criminal defendant for a list of the names of witnesses to be used against him. In holding that it was error to deny such a motion this Court said:

" 'It is self-evident that a list of witnesses would have been beneficial in the preparation of appellant's case. We do not require that the State lay bare its case in advance of trial nor that the criminal defendant be allowed a fishing expedition, however these objections do not arise when a list of witnesses is requested *and the State fails to show a paramount interest in non-disclosure.*' (Emphasis added.) 248 Ind. at 692 [230 N.E.2d 536].

"This principle was followed in *Johns v. State, supra* [251 Ind. 172, 240 N.E.2d 60], the Court saying:

" 'Under the doctrine outlined in *Bernard v. State* it is clear that the trial court, when requested by the defendant in a criminal proceeding has the duty to order the state to furnish the defendant with the names and addresses of those witnesses upon whom the state intends to rely in the prosecution of the case, *unless the state is able to show a paramount interest in non-disclosure* ... The purpose of the *Bernard* doctrine is to insure justice and fairness in criminal proceedings and it is axiomatic that an accused is not justly and fairly tried when his counsel is compelled to maneuver in a factual vacuum. Nor is fairness and justice enhanced when convictions are gained through surprise, or by the prosecution misleading the defense.' (Emphasis added.) 240 N.E.2d 60." *Antrobus et al. v. State,* (1970) 253 Ind. 420, 423–24, 254 N.E.2d 873.

Throughout the cases relating to criminal discovery, it has been recognized that there may exist a paramount, State interest in non-disclosure. The determination of whether or not the interest in non-disclosure is, in fact, paramount, however, is one to be determined by the court—not the State.

*Antrobus, supra,* was concerned with the accused's right to obtain witnesses' state-

ments in the possession of the police. We there outlined the procedure to be followed. After relating the necessity of a proper foundation disclosing entitlement to such discovery, we proceeded as follows:

"After laying this foundation, the defendant may move the trial court to require the State to produce such statements for use by the defense in cross examination and impeachment of the witness. If the foundation is proper the trial court must grant the motion and order the statements turned directly over to the defendant *unless* the State alleges: (a) There are no such statements within the control of the State. The trial court must conduct a hearing on the conflicting claims of the parties to resolve this issue. (b) There is a necessity for keeping the contents of the statements confidential. (c) The statement also contains matter not related to the matters covered in witness' testimony and the State does not wish to reveal that portion. In the latter two cases the statements need not be given directly to the defendant but should be given to the trial court for his decision concerning the State's claim. If the trial court agrees with the State then on (b) and (c) the trial court may deny defendant's motion or turn over to the defendant only the relevant portion of the statement." *Antrobus et al. v. State*, (1970) 253 Ind. 420, 427–28, 254 N.E.2d 873.

The State does not dispute that Defendants, as a general rule, are entitled to be informed as to witnesses who will confront them. It counters, however, by a claim that Defendant's counsel was put on notice, by inspection of the State's file, that *Jerry Moore* was the informant who alerted it to Defendant's illegal activity, that diligence required further inquiry and that the lack of such diligence warranted the trial court in denying the motion for a continuance. We believe such rationale will not suffice. To be sure, the nature of the testimony is important, but this does not derogate the identity of the witness. Without knowing such identity, how can credibility be assessed? How can cross-examination be planned?

The State's position cannot be tolerated. By its deception, it succeeded in concealing information to which the defendant was entitled. We are in no position to assess the utility of that information, nor was the trial judge. Other than the general nature of the testimony to be anticipated from the misidentified witness, defense counsel had no clue. There was no indication that the name provided was an alias; nor was there anything to suggest that the State claimed an interest in non-disclosure. Thus we are of the opinion that when Defendant advised his counsel that he did not know anybody named Jerry Moore, he was telling the truth, and counsel was justified in believing him. It is not irrational to conclude that counsel may well have thought that the State had erred. But, it is not for us to speculate in the matter.

"[It is not] realistic to assume that the trial court's judgment as to the utility of the material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 874–875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966).

In *Bernard v. State*, (1967) 248 Ind. 688, 230 N.E.2d 536, we reversed and ordered a new trial because the court denied a continuance motion and, over objection, permitted the State to present witnesses whose names had not been endorsed upon the indictment.

"For the above reasons (referring to Ind.Ann.Stat. § 9–903, now Ind.Code § 35–3.1–1–2(c) (Burns 1979)) a list of the prosecution's witnesses should have been granted to the appellant and we hold the judgment of the trial court should be reversed." 248 Ind. at 693, 230 N.E.2d 536.

In *Johns v. State*, (1968) 251 Ind. 172, 240 N.E.2d 60, the State, notwithstanding a trial court order to furnish the names and

addresses of its witnesses, had failed to furnish the appellant with any additional names, thereby leading him to conclude that it intended to rely upon only those witnesses whose names had been endorsed upon the indictment; but the court, over objection, permitted it to present, in its case in chief, testimony from four additional witnesses. We reversed and remanded the cause for a new trial, saying:

" * * * We agree with appellant's counsel in their argument that it is fundamentally a denial of due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States to lead a defendant to believe that he has been afforded the right of discovery, and then permit the State of Indiana, in violation of an order of court, to present, during its case in chief, surprise witnesses whose testimony substantially added to the weight of the State's case." 251 Ind. at 180, 240 N.E.2d 60.

Both *Bernard v. State, supra* and *Johns v. State, supra,* indicate that the State's misconduct in failing to comply with discovery obligations is cured by the grant of a continuance. Before yielding to temptation, however, one contemplating "sharp" or "shoddy" practice, should consider that a wilful or deliberate violation of disclosure requirements may not only impair the lawyer's ability to prepare properly for trial but, may also, substantially impair his ability to counsel his client properly and thus be regarded as a violation of the accused's right to counsel.

We are not here confronted with that question. Rather, there was a motion for continuance made and denied. Under the circumstances, the denial of that motion was reversible error, and the judgment of the trial court is reversed and the cause remanded for a new trial.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.