896 So.2d 1280 (2005)
STATE of Louisiana, Appellee
v.
Jack S. SPEARS, Appellant.
No. 39,302-KA.
Court of Appeal of Louisiana, Second Circuit.
March 17, 2005.
*1281 Bobby L. Culpepper, Jonesboro, for Appellant.
*1282 Robert W. Levy, District Attorney, Pamela A. Stewart, Clifford R. Strider, III, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS and DREW, JJ.
WILLIAMS, J.
The defendant, Jack S. Spears, was charged by bill of information with misapplication of construction contract payments in failing to settle claims, a violation of LSA-R.S. 14:202. After a jury trial, the defendant was found guilty as charged. The defendant was sentenced to serve four years at hard labor. The sentence was suspended and the defendant was placed on supervised probation and ordered to pay a $500 fine and all costs of the proceedings. As a condition of his probation, the defendant was ordered to pay restitution in the amount of $103,804.22. In accordance with the statute, the trial court determined that the jury had found that the defendant had knowingly failed to apply construction payments. The trial court further determined that the amount of misapplied payments was $103,804.22 and ordered the defendant to pay that amount to the court. The defendant now appeals, asserting numerous assignments of error. Finding that the evidence at trial was insufficient to sustain the verdict, it is unnecessary to discuss the remaining assignments. We reverse the defendant's conviction and sentence and enter a judgment of acquittal.

FACTS
This case involves the failure to pay material and labor liens in the construction of two chicken houses in Choudrant, Louisiana. Richard Joe Kirkham, Jr. and Karen Walker Kirkham were raising chickens for ConAgra Poultry Company, and wanted to expand their operation. In December 1999, the Kirkhams entered into a contract with the defendant, doing business as Spears Construction Company, Inc., to build two additional chicken houses for a "turn key" price of $196,000. The Kirkhams financed the funds by mortgaging their property. The contract provided for four draws, contingent upon the completion of particular stages of construction.
The record is not clear whether Spears Construction Company, Inc. was a valid corporation.[1] It apparently consisted of the defendant and his ex-wife, Debbie Spears. According to Debbie Spears, Spears Construction Company, Inc. had a separate tax identification number with the Internal Revenue Service. She did not recall that they followed any corporate formalities. She testified that all of the funds from the Kirkham job were wired to an account styled, "Spears Construction, Jack Spears, and Debbie Spears." The only persons who could withdraw funds from that account were Jack and Debbie Spears.
Construction began on the project, and the first two draws were made without any problems. The project became delayed during the third draw and several key pieces of equipment were not installed. The Kirkhams became concerned about the delays, but were unable to talk to the defendant about the project. When the third draw was due, the required work was not completed. The Kirkhams decided to make the third payment, even though the project had not been completed to the level *1283 required for the third draw. The third payment was wired to the Spears Construction Company account. The Kirkhams paid a total amount of $176,000 on the project.
After the third payment, little or no further work was done on the project despite a written demand by the Kirkhams to the defendant to complete the project. The Kirkhams began to receive material and labor lien notices from suppliers and workers on the project. At trial, Mrs. Kirkham testified that the liens and claims against their property were settled as follows:

Union Corrugated $ 11,500
ACME Engineering $ 9,500
GSI Group $ 14,975
Reuben Valdez $ 5,000
Mike James $ 2,700
Williams Enterprises $ 4,000
 ______
TOTAL $ 47,675

According to the Kirkhams, they had to pay an additional $45,978 to other contractors to complete the project. They borrowed over $68,000 in additional funds to pay the outstanding liens and claims and to complete the construction of the chicken houses.
The defendant was charged with misapplication of contract funds over $1,000, to which he pled not guilty. He filed a motion to quash, arguing defects in the statute. The motion to quash was denied by the trial court. The state sought to subpoena virtually all of the defendant's financial records. The defendant filed a motion to quash the subpoena, which was granted by the trial court.
After several continuances, the trial was scheduled to begin on July 29, 2003. On that date, the state moved to amend the bill of information to charge the defendant with misapplication of construction contract funds in an amount in excess of $10,000. The trial court allowed the amendment, over the defendant's objection. The record does not reflect that the defendant ever entered a plea to the amended charges.
On the same date, the state also sought to continue the trial, based on the unavailability of Debbie Spears. The defendant objected, arguing that Debbie Spears had not been subpoenaed, and that since the trial had already begun, a continuance could not be granted. The trial court granted the state's motion for continuance.
The state filed a "Request For Issuance of Out-Of-State Subpoena" for representatives of each of the businesses that filed liens against the Kirkhams' property. However, the state did not subpoena the representatives of the out-of-state lienholders for trial.
The trial began on October 28, 2003. The state's first witnesses were the Kirkhams. They testified about entering into the contract with the defendant, payments made and problems with getting the work completed. When the Kirkhams attempted to testify that the defendant did not pay the materialmen and the laborers and that liens were filed against the property, the defendant raised hearsay objections. He argued that the liens were not proof of the amounts owed, and he was unable to confront and cross-examine the entities that filed the liens.
During the arguments over the defendant's objections regarding the Kirkhams' testimony about the liens, the defendant stipulated that the liens could be filed into evidence as proof that liens were filed, but not as proof of the amount of the indebtedness. The trial court agreed and ruled that the use of the lien documents was *1284 limited to that purpose. Despite repeated objections by the defendant, the Kirkhams testified about the amount of the liens and the amount paid to settle the liens.
The defendant also objected when the Kirkhams attempted to testify about the amount of money that it took to complete the project, arguing that the issue was not material to whether the defendant knowingly failed to apply the money received to settle claims for materials and labor due on the project. The trial court overruled the defendant's objection. Karen Kirkham testified that the last time the defendant came onto the job site, he was driving a new Ford truck. The defendant objected based on lack of relevance and moved for a mistrial, arguing that the comment unfairly prejudiced his case. The trial court sustained the objection, but denied the motion for mistrial.
Debbie Spears testified that she did the bookkeeping for Spears Construction Company, Inc. and was familiar with the records of the business. She testified that the business account received $176,000 in payments from the Kirkhams, less $75 in wire transfer fees. She further testified that she reviewed the financial records and determined that from the amount received, approximately $57,195.78 was applied toward the job. Her calculation was based on "adding up all of the checks containing references to the Kirkham project."
On cross-examination, Debbie Spears acknowledged that some checks drawn from the business account would have been a single payment to a supplier for materials delivered to several jobs, and those checks would not necessarily reflect what jobs were being paid. As a result, the amount of $57,195.78 would not necessarily represent all of the payments made in connection with the Kirkham job. Debbie Spears also acknowledged that her list of total payments made to the Kirkham job would not reflect payments for salaries for the supervisors of the job or other overhead expenses.
Neither the state nor the defendant asked Debbie Spears to detail what happened to the remaining money paid by the Kirkhams. Debbie Spears was using copies of cancelled checks. She testified that other business records, including the check stubs, would contain the information necessary to determine to what jobs payments were allocated in each of the checks.
The remaining state witness was a banking officer who testified about the amount of payments wired to "Spears Construction Company." Thereafter, the state rested.
The defendant called two witnesses, his brothers, Gregory Spears and Wayne Spears. Gregory Spears testified that he performed the concrete foundation work on the Kirkhams' chicken houses. The work was completed and Gregory Spears was paid. Gregory Spears was also questioned at length as to the type of truck the defendant was driving during the Kirkham job.
Wayne Spears testified that he was hired as one of the supervisors for Spears Construction Company, Inc. The job included supervising the Kirkham job. Wayne Spears did not recall any material being delivered from the Spears Construction Company, Inc. warehouse to the Kirkham job site. On cross-examination, Wayne Spears stated the Kirkhams were unhappy because all of the equipment had not been delivered on time, and they told him that they would not pay the final draw until the equipment was installed. Wayne Spears testified that he tried to get *1285 the equipment delivered, but was unable to do so. He further testified that there were workers on the job site until two days before the defendant was arrested.
The jury found the defendant guilty as charged. The defendant filed a "Motion For Post-Verdict Judgment of Acquittal," alleging that the evidence was insufficient to convict him of the charge. The defendant also filed a "Motion in Arrest of Judgment," alleging that the bill of information was illegally amended, the charge of misapplication of construction funds over $10,000 does not fit the definition of the crime and the defendant never entered a plea to the amended charge. The defendant also filed a "Motion For New Trial," alleging that the trial court's ruling on the defendant's motions and objections created prejudicial error; the trial court erred in refusing to accept the defendant's proposed jury charges; and, the trial court erred by not instructing the jury of its responsibility to determine the amount of any misapplication of funds. The trial court denied all three motions. The trial court sentenced the defendant to serve four years at hard labor, which was suspended. The court placed the defendant on supervised probation and ordered the defendant to pay $103,804.22 for misapplied payments, a $500 fine and all costs of the proceedings. The court denied the defendant's oral motion to reconsider sentence. The defendant appeals.

DISCUSSION
The defendant argues that the evidence introduced at trial was insufficient to convict him of the crime charged, particularly in light of the hearsay evidence as to the settlement amounts of liens and claims against the property. The state argues that the evidence was sufficient to convict, and the evidence used was not hearsay.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The defendant argues that the trial court erred in not granting his motion for post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
The standard of appellate review for a sufficiency of the evidence claim now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165; State v. Combs, supra. The appellate court does not assess the credibility of witnesses or *1286 reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, XXXX-XXXX (La.11/14/03), 858 So.2d 422. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, and 2002-2997 (La.6/27/03), 847 So.2d 1255.
The defendant, a building contractor, was convicted of knowingly misapplying more than $10,000 in contract funds, "necessary to settle claims for material and labor due for the construction or under the contract," a violation of LSA-R.S. 14:202.[2] The elements that must be proved to establish a violation of LSA-R.S. 14:202 are: (1) the existence of a contract to construct, erect, or repair a building, structure, or other improvement; (2) the receipt of money on the contract; and (3) a knowing failure to apply the money received as necessary to settle claims for material and labor due under the contract. State v. Cohn, XXXX-XXXX (La.4/3/01), 783 So.2d 1269; State v. Weems, 595 So.2d 358 (La.App. 2d Cir.1992). In the present case, an additional element of proof necessary is that the amount of money misapplied totaled more than $10,000. LSA-R.S. 14:202(C). The statute requires more proof than the fact that a contractor left unpaid claims for materials and labor at the end of the construction contract. State v. Cohn, supra.
LSA-R.S. 14:202 is intended to prohibit a contractor from taking money from an owner to do a job for him, and then using all or part of the money received to pay for anything other than labor and material expenses incurred by the contractor on that job. He must apply enough of the funds received from the owner as is necessary to discharge all labor and material bills on that job, so the *1287 paying owner will not be subject to liens by laborers or materialmen. State v. Weems, supra. As long as the contractor applies all the money he receives from the owner to the labor and material bills he incurs on the owner's job, he is not criminally responsible under the statute, even if the amount received is insufficient to discharge all the bills. State v. Cohn, supra; State v. Weems, supra.
Viewed in the light most favorable to the state, the evidence at trial clearly established the first two elements of proof, that the defendant contracted to build two chicken houses for the Kirkhams for a "turn key" price of $196,000, and the defendant was paid $176,000 by the Kirkhams on the contract. There is also no dispute that material and labor liens were filed against the property.
For the third element, the state was required to prove beyond a reasonable doubt that the defendant knowingly misapplied the $176,000 received. In attempting to prove this element, the state did not produce any direct evidence of a single transaction where the defendant knowingly misapplied funds. Instead, the state relied on the testimony of the Kirkhams and Debbie Spears. The Kirkhams testified that they had to settle material and labor liens and borrow additional funds to complete the construction project.
Debbie Spears initially testified that of the $176,000 wired to the Spears Construction Company bank account, only $57,195.78 was paid out on claims and expenses for the Kirkham project. However, on cross-examination, Debbie Spears admitted that the $57,195.78 amount did not accurately reflect all the expense payments for the Kirkham project. She admitted that the figure she reached was based on adding up only the checks referencing the Kirkham project. She further admitted that the amount did not account for overhead expenses such as salaries or account for checks to suppliers and subcontractors for several jobs that were not reflected on the checks.
When the state relies on circumstantial evidence to prove an element of its case, the evidence must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438; State v. Weems, supra. The state's evidence that liens were filed against the Kirkhams' property, that the defendant did not complete the job, that additional funds were required to complete the project and that approximately $119,000 was unaccounted for expense payments supports an inference that the defendant misapplied the construction funds. However, LSA-R.S. 14:202 requires more proof than the fact that a contractor left unpaid material and labor claims. State v. Cohn, supra. LSA-R.S. 14:202 requires that a contractor knowingly fail to apply the money received as necessary to settle claims for material and labor due under the contract.
The state presented evidence that the defendant left unpaid claims for materials and labor on the Kirkham project thereby causing the Kirkhams to expend additional funds, but the state failed to produce evidence that the defendant knowingly misapplied any of the $176,000 received for use other than for the project costs. Thus, we find that the state did not present sufficient evidence to exclude every reasonable hypothesis of innocence and that the state failed to prove the third element of LSA-R.S. 14:202, i.e., a knowing misapplication of construction contract funds.
Since the evidence in this case fails to establish beyond a reasonable doubt that *1288 the defendant misapplied any of the $176,000 received for the Kirkham job, the trial court erred when it failed to grant the defendant's motion for post-verdict judgment of acquittal.

CONCLUSION
For the foregoing reasons, the judgment of the trial court denying defendant's motion for post-verdict judgment of acquittal is reversed. Defendant's conviction and sentence are vacated, and a judgment of acquittal is entered.
REVERSED; DEFENDANT ACQUITTED.
BROWN, J., dissents with written reasons.
BROWN, C.J., Dissenting.
Jackson v. Virginia, supra, provides the only standard that a reviewing court may use in a criminal case and that standard is whether a rational juror could have found all the elements of the crime proven beyond a reasonable doubt. The question is not whether the evidence excluded all speculation of defendant's intent but whether a rational juror could have found beyond a reasonable doubt that the contractor knowingly misapplied the money.
In State v. Cohn, supra, the supreme court found that the state presented direct evidence in the form of bank records to prove that the suppliers were not paid because the contractor did not apply all the money it received from the owner to the labor and material bills incurred on the owner's job which resulted in numerous liens being filed. In the instant case, the state presented bank records which fail to account for $119,000 paid by the owner as well as evidence of numerous liens which had been filed. Debbie Spears testified that labor and material bills for several jobs, including the Kirkham job, were paid at one time without breaking down the particular charges for a particular job. A juror could have reasonably concluded that Kirkham's money was lumped into the contractor's account from which he paid all sorts of bills. When the contractor ran out of money, labor and suppliers to the Kirkham site did not get paid. As in Weems, the defendant/contractor did not testify.
This case has more evidence than Weems but not all the factors found in Cohn. The jury exercised its discretion. I respectfully dissent.
NOTES
[1] Although much testimony involved whether Spears Construction Company, Inc. was a valid corporation, the issue has not been raised on appeal.
[2] LSA-R.S. 14:202 provides:

A. No person, contractor, subcontractor, or agent of a contractor or subcontractor, who has received money on account of a contract for the construction, erection, or repair of a building, structure, or other improvement, including contracts and mortgages for interim financing, shall knowingly fail to apply the money received as necessary to settle claims for material and labor due for the construction or under the contract.
B. When the amount misapplied is one thousand dollars or less, whoever violates the provisions of this Section shall be fined not less than one hundred dollars nor more than five hundred dollars, or imprisoned for not less than ninety days nor more than six months, or both.
C. When the amount misapplied is greater than one thousand dollars, whoever violates this Section shall be fined not less than one hundred dollars nor more than five hundred dollars, or imprisoned with or without hard labor for not less than ninety days nor more than six months, or both, for each one thousand dollars in misapplied funds, provided that the aggregate imprisonment shall not exceed five years.
D. Any person, contractor, subcontractor, or agent of a contractor or subcontractor who knowingly fails to apply construction contract payments as required in Subsection A shall pay to the court, and the court shall transfer to the person whose construction contract payments were misapplied, an amount equal to the sum of the payments not properly applied and any additional legal costs resulting from the misapplication of construction fund payments, including a fee charged by the clerk of court for handling such payments.