**Tandeka T. SMITH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 32A01–0409–CR–388.**

Court of Appeals of Indiana.

June 9, 2005.

Paula M. Sauer, Danville, for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, J.

### *STATEMENT OF THE CASE*

Appellant–Defendant, Tandeka Smith (Smith), appeals her convictions for three counts of dealing in cocaine, one Class A felony and two Class B felonies, Ind.Code § 35–48–4–1.

We affirm.

### *ISSUES*

Smith raises the following four issues on appeal:

(1) whether the trial court erred when it refused to require the State to disclose the identity of its confidential informant;

(2) whether the trial court properly allowed the State to offer lay opinion testimony;

(3) whether the trial court properly allowed evidence that Smith surrendered buy money from a controlled buy; and

(4) whether the State presented sufficient evidence that Smith sold at least three grams of cocaine to establish the Class A felony.

### *FACTS AND PROCEDURAL HISTORY*

On three separate occasions from May through July 2003, Detective Danny Wallace (Detective Wallace), a lieutenant with the Putnam County Sheriff's Department and a member of the United Drug Task Force, arranged a controlled drug buy from Smith at a Goodwill store in Plainfield. The first buy occurred on May 20, 2003. A female and a male confidential informant drove to the Goodwill parking lot and waited for Smith to arrive. When Smith arrived with an unidentified male, the male informant exited his vehicle and entered the back seat of Smith's vehicle. The informant gave Smith $350.00 in exchange for what was later determined to be 5.0 grams of cocaine. The entire transaction was observed from across the street by members of the drug task force and overheard through use of a wire.

A similar buy was conducted on June 19. Smith came alone and sold the male informant 2.07 grams of cocaine for $350.00. The third and final buy was conducted on July 8. The female informant only was dropped off at the Goodwill parking lot. When Smith arrived, she was again accompanied by an unidentified male. The informant entered Smith's vehicle and gave her $350.00 in exchange for 1.69 grams of cocaine. The police immediately arrested Smith and her occupant. Although members of the task force searched Smith, her vehicle, and the occupant, they were unable to recover the buy money.

Thereafter, Smith and her occupant were transported to the Plainfield Police Department. There, Smith was placed in an interview room where she was observed and videotaped. Before the officers entered the room, Detective Carri Weber (Detective Weber), also a member of the drug task force, observed Smith remove what she believed was the buy money from a body cavity. As a result, Detective Weber transported Smith to a local hospital for a body cavity search. Before the examination, however, Smith surrendered the buy money, which had been concealed in her shoe.

On July 9, 2003, Smith was charged with Count I, dealing in cocaine, a Class A

felony, I.C. § 35–48–4–1(b)(1); Count II, possession of cocaine, a Class C felony, I.C. § 35–48–4–6(b)(1)(A); Count III, dealing cocaine, a Class B felony, I.C. § 35–48–4–1(a); Count IV, possession of cocaine, a Class D felony, I.C. § 35–48–4–6(a); Count V, dealing in cocaine, a Class B felony, I.C. § 35–48–4–1(a); and Count VI, possession of cocaine, a Class D felony, I.C. § 35–48–4–6(a). On June 2, 2004, Smith filed a motion to suppress the confidential informants' statements contained on any of the police videotapes and audiotapes due to the State's refusal to reveal their identities. During the suppression hearing, the State agreed not to introduce the audiotapes of the controlled buys or the audio portions of any videotapes because the audiotapes were unclear. In a second motion to suppress filed July 12, 2004, Smith sought exclusion of any evidence seized as a result of the second and third controlled buys because, in Smith's opinion, the evidence was obtained through outrageously dangerous conduct. That motion was denied following a hearing held on July 15, 2004.

A jury trial was held July 26–27, 2004, during which the State presented the testimony of Detective Wallace and Detective Weber and the videotape of Smith in the interview room. Thereafter, Smith was found guilty on all counts. On August 10, 2004, Smith was sentenced to thirty years imprisonment for count I, and ten years each on counts III and V, both to be served concurrent to count I and each other. Counts II, IV, and VI were vacated.

Smith now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Disclosure of the Confidential Informants' Identities*

■ Smith first contends that the trial court erred when it refused to compel the State to disclose the names of the confidential informants. In particular, Smith maintains that the two informants, who engaged in the drug transactions, were the sole material witnesses to the charged offenses.

In support of her contention, Smith relies on *Roviaro v. United States*, 353 U.S. 53, 61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in which the Court was asked to determine whether the government had the right to withhold an informant's identity when the informant had "helped to set up the commission of the crime and ... was present at its occurrence." In that particular case, an informant drove his vehicle, with a police officer hidden in the trunk, to a predetermined location. *Id.* at 56, 77 S.Ct. 623. After the defendant arrived in his vehicle, he exited his vehicle and entered the front passenger's seat of the informant's vehicle. *Id.* at 57, 77 S.Ct. 623. The informant and the defendant then drove to another location where the defendant exited the informant's vehicle, walked to a nearby tree and picked up a small package. *Id.* The defendant then returned to the vehicle, appeared to place the package inside the vehicle, and walked away. *Id.* Another officer, who had been following the informant, immediately recovered the package, which was later determined to contain heroin. *Id.* at 57–58, 77 S.Ct. 623.

The defendant was charged with knowingly receiving, concealing, buying and facilitating the transportation and concealment of heroin, knowing that the heroin had been imported. *Id.* at 55, 77 S.Ct. 623. Before trial, the defendant requested that the government disclose the informant's identity. *Id.* This request, along with additional requests made at trial, was denied. *Id.* During trial, the narcotics agents described the informant's role. *Id.*

at 55–56, 77 S.Ct. 623. In addition, the officer, who had hidden in the trunk of the informant's vehicle, testified that he heard the defendant ask the informant about money he owed him and tell the informant that he "had brought him 'three pieces this time.'" *Id.* at 57, 77 S.Ct. 623. Following a bench trial, the defendant was found guilty as charged. *Id.*

On appeal, the defendant argued that because the informant was an "active participant" in the events which led to the defendant's indictment, the district court erred when it allowed the government to withhold the informant's identity. *Id.* at 58, 77 S.Ct. 623. The Supreme Court agreed. Initially, the Court explained that withholding an informant's identity is a privilege afforded the government to allow it to protect its sources of information. *Id.* at 59, 77 S.Ct. 623. The Court further noted, however, that the privilege is "limited by its underlying purpose." *Id.* at 60, 77 S.Ct. 623. Therefore, the privilege is not applicable if "the identity of the informer has been disclosed to those who would have cause to resent the communication . . . ." *Id.* The Court also noted that the privilege is limited by the concept of fundamental fairness. *Id.* "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61, 77 S.Ct. 623.

The Court finally noted that there is "no fixed rule with respect to disclosure . . . ." *Id.* at 62, 77 S.Ct. 623. Rather, a request for disclosure involves a balance between "protecting the flow of information against the individual's right to prepare his defense." *Id.* Applying the balancing test, the Court ultimately concluded that disclo-

sure was required. *Id.* at 63–64, 77 S.Ct. 623. The Court found particularly relevant that the informant was the defendant's "one material witness" who could have "controvert[ed], e[x]plain[ed] or ampliffied]" the report of the officer, who had hidden in the trunk of the vehicle and testified concerning the defendant's statements at trial. *Id.* at 64, 77 S.Ct. 623.

The State acknowledges the holding in *Roviaro,* but contends that it can be distinguished from this case. In particular, the State maintains that the informants were not the sole material witnesses for the first and third controlled buys because another individual was present in Smith's vehicle. The State also maintains that Smith knew the identity of the male confidential informant, who purchased the cocaine during the first and second controlled buys, but failed to subpoena him. Thus, the State contends that providing the informants' names would not have been essential to a fair determination of the case.

Initially we note that because the confidential informants actively participated in the drug transaction, similar to the informant in *Roviaro,* they are material witnesses. *See Ortez v. State,* 165 Ind.App. 678, 333 N.E.2d 838, 843 (1975) (recognizing that an informant who participates in a controlled buy is a material witness). We further note that similar to the officer in *Roviaro,* who had testified to the conversation that he overheard during the drug transaction, Detective Wallace testified that he heard the informants count out the money and ask the defendant "if the stuff [was] still good" and heard Smith reply that it was. (Transcript p. 359). Therefore, the informants could have controverted, explained or amplified Detective Wallace's trial testimony about what occurred during the drug buys.[1]

1. Although Detective Weber also overheard

the drug transactions, she was unable to re-

Nevertheless, as the State contends, the transcript reveals that Smith was accompanied by another individual during the first and third buys. Thus, the male informant, who participated in the first buy, and the female informant, who participated in the third buy, were not the sole material witnesses who could have contradicted or explained Detective Wallace's trial testimony. In addition, Smith does not allege that the person who had accompanied her could or would not have testified at trial. Therefore, Smith has failed to show that each informant's identity was required with regard to the first and third buys. *See Lewandowski v. State*, 271 Ind. 4, 389 N.E.2d 706, 710 (1979) (approving and adopting this court's holding that disclosure of informant's identity at trial for delivering marijuana was not required, in part, because informant was only one of several people present during transaction and defendant did not show that others were unable or unwilling to testify); *Adamov v. State*, 536 N.E.2d 281, 284 (Ind. 1989) (finding that confidential informant, whose claim to have bought heroin from defendant in past led police to investigate and eventually arrest defendant for dealing heroin, was not sole material witness where others present when defendant was arrested could have provided same exculpatory testimony and defendant failed to show other witnesses were unable or unwilling to testify).

■ However, because the male informant was the sole material witness with regard to the second controlled buy,[2] we must still determine whether Smith's knowledge of his identity establishes that disclosure was not required. The transcript reveals that during the second suppression hearing, Smith attempted to show that the police used outrageously dangerous conduct to obtain evidence in the first and second buys. In particular, Smith alleged that the State had allowed the male informant to drive to the controlled buys on a suspended license. To support her claim, Smith had to establish the identity of the male informant. Therefore, Smith testified that the man, who appeared in a photograph provided by the State and identified as the male informant, was Robert Wilbur. When asked by the prosecutor how she knew Wilbur, Smith replied that Wilbur was her sister-in-law's husband, whom she had known for five or six years. (Tr. p. 33). Thus, the transcript establishes that Smith knew the identity of the male informant.[3]

call exactly what was said due to the number of controlled buys which she conducts. (Tr. p. 281).

**2.** Although the female informant accompanied the male informant during the second controlled buy, the transcript reveals that she stayed in her vehicle during the transaction. Therefore, she cannot be considered a "witness in a position to amplify or contradict the testimony of government witnesses." *Roviaro*, 353 U.S. at 64, 77 S.Ct. 623.

**3.** Smith suggests that the transcript does not conclusively prove that she knew the informant's identity because "the State steadfastly refused to confirm or deny [her] suspicion ...." (Appellant's Br. p. 15). In a footnote, the *Roviaro* court noted that the record in that case revealed that the defendant may have known the informant's identity. *Roviaro*, 353 U.S. at 60 n. 8, 77 S.Ct. 623. However, the Court also noted that the informant in *Roviaro* denied knowing or ever having seen the defendant when he saw the defendant at the police station. *Id.* The Court also noted that the trial court had made "no factual finding that [defendant] knew [the informant's] identity." *Id.* Here, while the State generally refused to confirm Smith's knowledge of the informant's identity as Smith suggests, there is no evidence that her knowledge was contradicted by a State witness. We further conclude that given the absence of conflicting evidence and Smith's own admission that she knew the male informant to be her sister-in-law's husband, a factual determination concerning Smith's knowledge was not required.

A defendant's knowledge of an informant's identity has been considered as a factor in determining whether a trial court should have granted a defendant's request for an informant's identity. *See Schlomer v. State*, 580 N.E.2d 950, 954 (Ind.1991) (finding defendant failed to demonstrate need for disclosure of informant's identity where, among other things, defendant admitted knowing informant's identity); *Mengon v. State*, 505 N.E.2d 788, 790 (Ind. 1987) (concluding that defendant failed to show that informant's identity was relevant or helpful for trial and was required for fair determination of case where evidence showed, in part, that defendant strongly suspected individual was informant), *reh'g denied; Davenport v. State*, 464 N.E.2d 1302, 1306 (Ind.1984) (finding that although confidential informant played "a major part in the controlled buy" which formed basis for search warrant, defendant failed to show that disclosure of informant's name was essential to a fair determination of the case since defendant "strongly suspected" certain individual was informant and could have subpoenaed her as a defense witness at suppression hearing or at trial), *reh'g denied, cert. denied*, 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416. In each case, the court essentially reasoned that the trial court could not have erred by failing to disclose something which the defendant already knew or strongly suspected.

■ However, in *Roviaro*, the Court noted that if the government could have established that the defendant knew the informant's identity, "whatever privilege the Government might have had would have ceased to exist ...." *Roviaro*, 353 U.S. at 60 n. 8, 77 S.Ct. 623. The Court

explained that once an informant's identity is known, the government no longer has a legitimate need to protect it. *Id.* Therefore, based on *Roviaro*, we find that a defendant's knowledge of an informant's identity actually establishes that disclosure is required. That is, if Smith knew the informant's identity, the State's ability to protect him ceased to exist and the privilege would no longer have been applicable. At the very least, the State's interest in protecting its source was greatly diminished once Smith identified the informant and was outweighed by Smith's need to obtain potentially exculpatory evidence. *See People v. Woods*, 139 Ill.2d 369, 152 Ill.Dec. 110, 565 N.E.2d 643, 650 (1990) (noting that defendant's knowledge of informant's identity either reduces or defeats the State's interest in protecting informant's identity in the balance between "public interest in shielding [the informant's identity]" and "defendant's need for it").

Nevertheless, Smith's knowledge of the informant's identity also establishes that the decision to withhold the informant's identity is harmless error. *See id.* (analyzing whether trial court's erroneous decision to withhold informant's identity was harmless beyond a reasonable doubt). *See also Ortez*, 333 N.E.2d at 847. Smith admitted that she knew the identity of the person the State alleged was the confidential informant. However, there is no evidence that Smith subpoenaed him or attempted to take his deposition before trial. Smith does not allege that she was unable to do so because she did not know his whereabouts. There is also no evidence that Smith was unable to secure the informant's attendance at trial because he was unwilling to testify.[4] Rather, it appears

---

4. It has been recognized that a trial court's failure to disclose an informant's identity is prejudicial, even though the informant's identity was known, when a defendant's attempts to secure the informant's presence at trial have been unsuccessful. *See Woods*, 152 Ill. Dec. 110, 565 N.E.2d at 651–53 (holding that trial court's failure to require State to dis-

that Smith used the information to the extent she wanted. For instance, at trial, Smith questioned the State's witnesses about the male informant's prior charges and forced them to admit that he was a habitual traffic offender and may have had a felony charge dismissed because of his participation in the controlled buys. Under these circumstances, we fail to see what more could have been gained by disclosure of the informant's name.[5] Therefore, any error in withholding the informant's name was harmless. *See Woods*, 152 Ill.Dec. 110, 565 N.E.2d at 653 (concluding that trial court's decision to refuse request for disclosure was harmless error when "[f]ormal disclosure of the informant's identity would not have provided any information that the defense did not already have . . . .") (Miller, J., dissenting); *State v. James*, 396 So.2d 1281, 1284–85 (La.1981) (concluding that defendant failed to show prejudice resulting from trial court's refusal to grant request for informant's identity where record revealed defendant had known informant for seven years, was familiar with his role in the drug transaction, and could have called him as a witness at trial). For these reasons, we conclude that the trial court did not err by withholding the female infor-

mant's identity and that the trial court's decision to withhold the male informant's name was harmless error.

## II. *Admissibility of Lay Opinion Testimony*

Next, Smith contends that the trial court erred when it permitted Detective Weber to testify about what Smith appeared to be doing in a videotape at the police station. As Smith contends, at trial, the State introduced a videotape of her while she waited alone in an interview room before officers entered to talk to her. While playing the tape for the jury, the State asked Detective Weber to describe what Smith appeared to be doing. Smith objected on the basis that Detective Weber was invading the province of the jury because Detective Weber did not have superior knowledge. The trial court overruled the objection and allowed Detective Weber to state that she believed Smith was "possibly pulling something, suspectedly, [sic] our buy money[,] out of her vagina." (Tr. p. 222). Smith maintains that the trial court's ruling was erroneous because the State failed to show that Detective Weber's testimony was admissible as lay opinion testimony under Evidence Rule 701.

close informant's identity, which defendant knew prior to trial, was prejudicial where defendant had been unsuccessful in procuring defendant's attendance with subpoena and disclosure would have aided defendant in discovering informant's whereabouts and securing attendance at trial). Here, however, there is no evidence that the informant in this case was unwilling to testify or that the defendant was unable to discover the informant's whereabouts. There is also no evidence the defense attempted to secure the informant's presence at trial. This fact, and the absence of any evidence showing that the State contributed to the defense's inability to locate the informant, makes this case distinguishable from *Ortez v. State*, 165 Ind.App. 678, 333 N.E.2d 838, on which Smith relies.

5. We find unconvincing Smith's claim that "there is no reason to believe that [the trial court] would have permitted Smith to depose or call as witnesses people she believed to be informants" when the trial court had previously denied her request for the informants' identities. (Appellant's Reply Br. p. 3). Smith was responsible for subpoenaing the person she believed was the informant. *See Powers v. State*, 440 N.E.2d 1096, 1103 (Ind. 1982) (requiring defendant to subpoena individual defendant strongly suspected was informant), *cert. denied*, 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 808 (1983). Further, there is nothing in the transcript to support Smith's belief, considering that the defense was able to disclose some of the informant's prior charges at trial.

■ Evidence Rule 701 provides that "[i]f the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." While the person giving opinion testimony under Rule 701 need not be qualified as an expert, she should possess knowledge beyond that of the average juror. *Prewitt v. State*, 819 N.E.2d 393, 413 (Ind.Ct.App.2004), *trans. denied.* The trial court is afforded broad discretion in ruling on the admissibility of evidence and we will reverse only for an abuse of that discretion. *Howard v. State*, 816 N.E.2d 948, 960 (Ind.Ct.App.2004), *reh'g denied.*

Here, the transcript reveals that Detective Weber had been a police officer for thirteen years and a member of the drug task force for three and a half years. The transcript further reveals that Detective Weber had received specific training with regard to her duties at the United Drug Task Force, beyond that provided to police officers, and had conducted numerous controlled buys. Thus, through both her training and experience, Detective Weber possessed knowledge beyond that of the average juror with regard to the drug culture. In addition, her testimony was rationally based on her perception of Smith's actions and helped the jury determine whether Smith had been in possession of the buy money from the third buy and, ultimately, whether she had delivered the cocaine to the informant. Therefore, the trial court did not abuse its discretion in allowing Detective Weber's testimony. *See Cutter v. State*, 725 N.E.2d 401, 406 (Ind.2000) (concluding trial court did not abuse its discretion in permitting murder victim's life partner to testify that victim's vagina appeared larger than usual when testimony helped jury determine whether forceful penetration had occurred on rape charge), *reh'g denied; Kent v. State*, 675 N.E.2d 332, 338–39 (Ind.1996) (holding that police officer, who had emergency medical technician training and had observed defendant straddle child and roughly thrust on child's abdomen, was properly permitted to testify that defendant's intent was to harm, not to resuscitate, child).

■ Nevertheless, even assuming error, Smith has failed to demonstrate prejudice. We will not reverse a conviction unless trial court error is inconsistent with substantial justice or has affected a substantial right of the party. *Howard*, 816 N.E.2d at 960. "In determining whether error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury." *Douglas v. State*, 746 N.E.2d 424, 428 (Ind.Ct.App.2001), *trans. denied.*

Smith contends that she was prejudiced by the trial court's ruling because Detective Weber's testimony allowed the jury to conclude that Smith possessed the buy money, and "seal[ed][her] fate" on her dealing charge for the third buy. (Appellant's Br. p. 19). However, the testimony to which Smith objected, was not the only evidence that Smith had the buy money in her possession. Soon after Detective Weber described Smith's actions in the videotape, she testified, without objection, that after she had transported Smith to the hospital for a body cavity search, Smith retrieved the money from her shoe and gave it to her. Therefore, even had the trial court not permitted Detective Weber's opinion testimony, the jury still would have had before it evidence that Smith eventually surrendered the buy money. Given this evidence, the testimony to which Smith objected, would have tend-

ed to explain why the police were unable to locate the buy money after her arrest. Consequently, the probable impact of the opinion testimony, in light of all the evidence in the case, is sufficiently minor so as not to affect Smith's substantial rights. *See Stephenson v. State*, 742 N.E.2d 463, 481 (Ind.2001) (concluding that any error in allowing opinion testimony was not prejudicial where testimony was merely cumulative of other evidence of record), *cert. denied*, 534 U.S. 1105, 122 S.Ct. 905, 151 L.Ed.2d 874 (2002).

## III. *Admissibility of Smith's Surrender of the Buy Money*

 Still Smith contends that the trial court improperly allowed the State to introduce evidence of Smith's surrender of the buy money from the third controlled buy. Specifically, Smith alleges that because the State failed to establish that she had been given *Miranda* warnings, evidence concerning her surrender of the buy money, should have been suppressed. Smith further alleges that without evidence that she possessed the buy money, the jury would not have convicted her of the third count of dealing cocaine.

During its direct examination of Detective Weber, the State began to question her about a conversation she had had with Smith concerning the location of the buy money from the third controlled buy. Smith objected on the basis that the State failed to establish that she had been given *Miranda* warnings.

[STATE]: Okay. And did you have a conversation with [Smith] about where the money—you know, where's the money?

[DETECTIVE WEBER]: Yes, I did.

[STATE]: Okay. Did [Smith] initially deny knowledge of where the money was?

[DETECTIVE WEBER]: Yes.

[DEFENSE]: Your Honor, at this time the defense is going to object. Uh, this witness has testified that she did not [M]irandize, uh, Miss Smith ... the State has to prove beyond a reasonable doubt that she was given her *Miranda* rights prior to any questions being asked and I don't think that that's happened so we object to this line of questioning.

* * *

[COURT]: I'm going to sustain that objection at this time, uh, I think a proper foundation has not been made.

(Tr. pp. 216–17). Immediately thereafter, the State tried, without success, to establish a proper foundation.

[DEFENSE]: Judge, I'm going to object. [Detective Weber] said she didn't hear [the *Miranda* warnings being given;] to emphasi[ze] you know what might be said calls for speculation[,] conjecture, that's not allowed.

[COURT]: All right, response?

[STATE]: [Detective Weber]—Your Honor, she's not speculating, she's telling you exactly what occurred.

[COURT]: Well, when you say generally, I think you're speculating. I'll sustain the objection. She can testify what she observed or what she did.

(Tr. p. 218). The State then sought to admit the videotape of Smith in the interview room where Smith allegedly removed the buy money. Smith again objected as follows:

[DEFENSE]: And, Your Honor, we would object. Uh, this tape is an in-custody tape of [Smith] being interrogated and although the audio has been taken off of this tape, once again, [Smith]—she wasn't [M]irandized. [Smith] was not given her rights and

this tape is going to show something that was done against our constitution. [COURT]: Response?

[STATE]: Your Honor, actually what is going to be viewed is [Smith] in the video—in the interview room. There is no audio. The audio comes from statements—the *Miranda* warnings go toward[ ] statements only.

[COURT]: Okay, the officer testified that [Smith] was [M]irandized at the scene but she could not recall reading the words or hearing the words but she recalls that it was done. If there's no audio on the tape, uh, I think the tape can be admitted. So, I'll overrule the objection and admit [the videotape].

(Tr. pp. 219–220). As noted in the section above, as the State played the videotape, Detective Weber testified that she believed that Smith was removing the buy money from a body cavity. Detective Weber further testified, without objection, that Smith eventually surrendered the buy money after being transported to the hospital for a body cavity search. Specifically, she testified that Smith gave her the money after she told Smith that she would release the occupant of her vehicle, who also been arrested, if she turned over the buy money.

In support of Smith's contention that "[t]estimony regarding [her] surrender of the buy-money was admitted over [her] objections," Smith relies upon cases which state that incriminating statements and physical evidence inextricably bound to those statements must be suppressed if *Miranda* warnings are not given. (Appellant's Br. p. 22). However, as the transcript reveals, following defense objections, the trial court did not allow Smith's statements into evidence. The transcript further reveals that only testimony concerning Smith's surrender of the buy money, and not the buy money itself, was admitted at trial. As neither statements nor physical evidence was admitted, the cases cited by Smith do not support her contention.

However, *Miranda* protects all testimonial responses, including nonverbal conduct. *Pennsylvania v. Muniz,* 496 U.S. 582, 595 n. 9, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). *See also Bivins v. State,* 433 N.E.2d 387, 390 (Ind.1982) ("The Fifth Amendment to the United States Constitution ... prohibit[s] compulsion of statements or actions by a defendant which constitute communications or are testimonial in nature."). "In order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Curry v. State,* 643 N.E.2d 963, 976 (Ind. Ct.App.1994), *reh'g denied, trans. denied.* "[N]on verbal conduct contains a testimonial component whenever the conduct reflects the actor's communication of his thoughts to another." *Muniz,* 496 U.S. at 595 n. 9, 110 S.Ct. 2638.

Here, we cannot say that Smith's conduct reflects a communication of her thoughts to another. The transcript reveals that after her arrest, Smith was transported to the police department and taken to an interview room. The transcript also reveals that the police observed her before they entered the room to question her about the location of the buy money. Thus, Smith was alone when she removed the buy money, and there is no evidence that the police said or did anything to evoke a response immediately before she entered.[6] Finally, because Smith apparently moved the buy money from one

---

**6.** Although there is evidence that Detective Weber asked Smith where the buy money was and that Smith initially denied knowing its location, there is no evidence that the conversation occurred before Smith entered the interview room.

area of her body to another and did not surrender it at that time, she could not have intended her actions to be an admission that she was in possession of the buy money. As Smith's actions were not testimonial, they were not entitled to the protections of *Miranda.*[7]

However, even assuming that Smith's actions on the videotape should have been suppressed, admitting it was harmless error. *See Davies v. State,* 730 N.E.2d 726, 735 (Ind.Ct.App.2000) ("[Evidence] obtained in violation of *Miranda* and erroneously admitted [is] subject to harmless error analysis."), *reh'g denied, trans. denied, cert. denied,* 532 U.S. 945, 121 S.Ct. 1410, 149 L.Ed.2d 352 (2001). As noted in the section above, after the State played the videotape, Detective Weber testified to Smith's actual surrender of the buy money at the hospital. While Smith appears to argue that this evidence also should have been suppressed, an objection was not raised when the testimony was offered. Therefore, it was properly before the jury. *See Poulton v. State,* 666 N.E.2d 390, 393 (Ind.1996) (noting that defense must object when evidence allegedly taken in violation of *Miranda* is offered). Because this evidence also showed that Smith had the buy money in her possession, any error in allowing the videotape depicting Smith in possession of the buy money was harmless.

## IV. *Sufficiency of the Evidence*

◼ Finally, Smith contends that the evidence is not sufficient to support her conviction for dealing cocaine as a Class A felony. Dealing in cocaine is a Class A felony if "the amount of the drug involved weighs three (3) grams or more." I.C. § 35–48–4–1(b)(1). Smith concedes that the State offered proof that the cocaine weighed 5.0 grams through State's Exhibit 16, the Indiana State Police laboratory report. However, Smith contends that the trial court erroneously admitted the exhibit over her objection.

Initially we note that while Smith contends that the evidence is insufficient to support her conviction, she does not suggest that State's Exhibit 16, if properly admitted, would not have satisfied the State's burden of establishing that the cocaine weighed at least three grams. Thus, Smith's contention actually centers upon the trial court's decision to admit the State's exhibit into evidence. Therefore, we must determine whether the trial court abused its discretion when it admitted State's Exhibit 16 over defense objection. *See Howard,* 816 N.E.2d at 960.

The defense objected on the basis that a proper foundation had not been established. Specifically, it argued that the scale, which was used to weigh the cocaine, should have been tested for accuracy both before and after its use. The trial court overruled the objection and allowed the exhibit into evidence on the grounds that the objection went to the weight of the evidence and not its admissibility. We agree.

In *Robinson v. State,* 634 N.E.2d 1367, 1374 (Ind.Ct.App.1994) the defendant challenged the admission of the State Police Laboratory forensic chemist's testimony concerning the weight of cocaine. In par-

---

**7.** This same evidence also establishes that Smith's actions were not the result of interrogation. A defendant is not entitled to the safeguards of *Miranda* unless she is both in custody and subject to interrogation. *Curry,* 643 N.E.2d at 976. Interrogation refers "not only to express questioning but also to any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 976. As nothing in the transcript reveals that the police said or did anything to elicit a response, Smith was not entitled to have evidence of her conduct suppressed.

ticular, the defendant contended that the State had failed to provide evidence establishing the accuracy of the scales. *Id.* This court held that the State was required to show that the scales were tested "before and after their use." *Id.* However, we concluded that the chemist's testimony that the scales were calibrated about two months before and about eight months after its use satisfied that burden. *Id.* This court further held that although the defense may rebut the State's evidence, the "question of accuracy is ultimately a question for the trier of fact." *Id.*

In this case, a chemist for the State Police Laboratory George Smith testified that when he weighed the cocaine on March 4, 2004, he checked the calibration "on that date with one and three gram weight" and that the weights were within the one hundredth of a gram margin of error. (Tr. p. 236). Smith further testified that the scale was calibrated by an outside vendor "every year in [ ] April" and that it was last calibrated in April 2003. (Tr. p. 237). Finally, Smith testified that if the margin of error is greater than one hundredth of a gram, the machine has to be re-calibrated. Thus, not only did the State's witness establish that the scale was calibrated annually, but he also established that it was checked immediately before its use on March. 4, 2004. Contrary to Smith's assertion, the State was not required to prove that the scale was checked immediately before and after each use. As the State's evidence sufficiency establishes the accuracy of the scale, the trial court properly admitted State's Exhibit 16 and left the ultimate determination of accuracy to the jury. With evidence that the cocaine purchased during the first buy weighed 5.0 grams, the jury had before it ample evidence on which to find Smith guilty of dealing cocaine as a Class A felony.

## CONCLUSION

Based on the foregoing, we find that the trial court did not err by refusing to disclose the female informant's identity because she was not the sole material witness to the third controlled buy. While the male informant was the sole material witness to the second controlled buy, the trial court's decision to withhold his identity was harmless error given Smith's admission that she knew him. The trial court also did not err by admitting Detective Weber's lay opinion testimony or the videotape of Smith. Moreover, any error in their admission was harmless given that evidence of Smith's surrender of the buy money was offered without objection. Finally, the evidence was sufficient to establish that Smith possessed at least three grams of cocaine during the first controlled buy because the State laid a proper foundation for the testimony establishing the cocaine's weight.

Affirmed.

SULLIVAN, J., and NAJAM, J., concur.